IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 13-21415-CMB |
| | ) | |
| **FLABEG SOLAR US CORPORATION,** | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **FLABEG SOLAR US CORPORATION,** | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 15-2152-CMB |
| | ) | |
| v. | ) | |
| | ) | Related to Doc. No. 32 |
| **ERGO VERSICHERUNG AG,** | ) | |
| **NHA HAMBURGER** | ) | |
| **ASSEKURANZ-AGENTUR, GMBH,** | ) | |
| **ALLIANZ VERSICHERUNGS-AG,** | ) | |
| and **MUNICH RE,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The matter before the Court is the *Motion to Dismiss Adversary Proceeding Complaint* ("Motion") filed by Defendants ERGO Versicherung AG ("ERGO"), Allianz Versicherungs-AG ("Allianz"), and NHA Hamburger Assekuranz-Agentur GmbH ("NHA," collectively referred to herein as "Movants").[1] The Motion is opposed by Flabeg Solar US Corporation, the Debtor and Plaintiff herein ("Debtor"). For the reasons that follow, this Court finds that the Motion must be granted as this Court may not exercise personal jurisdiction over the Movants.

---

[1] The Defendants in this proceeding are Movants and Munich Re; however, to date, Munich Re has not participated in this proceeding by filing an answer or motion in response to the Complaint.

1

**Procedural History**

The above-captioned adversary proceeding was commenced on July 31, 2015, by the filing of Debtor's *Adversary Complaint* ("Complaint"). Therein, Debtor asserts that Movants provided insurance to Debtor related to Debtor's shipments of glass solar reflectors to its customers. Debtor submitted a claim seeking payment in the amount of $434,020.32 regarding losses suffered with respect to shipments to India. Debtor contends that Movants breached their contract by failing to remit payment. In addition, in violation of 42 Pa.C.S. §8371, Debtor avers that over two years passed without any communication regarding the status of Debtor's claim, entitling Debtor to an award of interest, punitive damages, court costs, and attorney's fees.

Thereafter, Movants filed the instant Motion, accompanied by a memorandum in support, seeking dismissal for lack of personal jurisdiction, improper venue, insufficient service of process, and failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(2), (3), (5), and (6). Debtor filed a response opposing dismissal. At the initial hearing on February 23, 2016, the Court directed the parties to confer and continued the matter to a status conference, at which time the parties were to advise the Court if discovery and an evidentiary hearing would be necessary to resolve the issue of personal jurisdiction. At a status conference held March 22, 2016, the parties advised that discovery was ongoing with respect to the issues of personal jurisdiction and service; however, the parties had not yet determined whether an evidentiary hearing would be necessary.

At a continued status conference, the parties advised that they were not seeking an evidentiary hearing and instead opted to submit stipulated facts. The Court set briefing deadlines regarding the threshold issues of service and personal jurisdiction and advised that the issues of venue and failure to state a claim would be addressed only if the threshold issues were first resolved

in Debtor's favor. The parties filed their *Stipulated Joint Findings of Fact as to Pending Motion to Dismiss Adversary Proceeding Complaint* ("Stipulated Findings of Fact," Doc. No. 53) and briefs. At the conclusion of briefing, the Motion was taken under advisement and is now ripe for decision.

## Standard

The Court begins by addressing the Movants' challenge to personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012. In the face of a jurisdictional challenge, the burden is on the plaintiff to demonstrate facts that establish personal jurisdiction. *See D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). In the absence of an evidentiary hearing, the plaintiff must establish a prima facie case. *Id.* A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *See Steinfield v. EmPG Int'l, LLC*, 97 F.Supp.3d 606, 611 (E.D. Pa. 2015) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)). Once a plaintiff meets its burden, the burden is on the defendant to show an absence of fairness or lack of substantial justice. *See Capmark Fin. Grp. Inc. v. Lin* (*In re Capmark Fin. Grp. Inc.*), 479 B.R. 330, 341 (Bankr.D.Del.2012).

At this initial stage without an evidentiary hearing, the court accepts the plaintiff's allegations within the complaint as true and resolves factual disputes in plaintiff's favor where evidence conflicts. *See D'Jamoos*, 566 F.3d at 102; *Metcalfe*, 566 F.3d at 330. Where the defendant submits evidence contravening the allegations of the complaint, a plaintiff may not rely on the bare pleadings alone to withstand a challenge to the court's exercise of personal jurisdiction. *See In re Chocolate Confectionary Antitrust Litig.*, 641 F.Supp.2d 367, 381-82 & n.21 (M.D.Pa. 2009);

3

*Southern Polymer, Inc. v. Master Extrusion, LLC,* No. 15cv1696, 2016 WL 1247354, at *3, 2016 U.S. Dist. LEXIS 44189, at *7-8 (W.D.Pa. Mar. 30, 2016). The plaintiff must demonstrate by affidavits or other competent evidence that the court may exercise personal jurisdiction. *See Metcalfe*, 566 F.3d at 330 (citing *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).[2] With this standard in mind, the Court examines the parties' submissions.[3]

## **Factual Background**[4]

In 2013, the above-captioned bankruptcy case was commenced by the filing of an involuntary petition against the Debtor.[5] Debtor is a wholly-owned subsidiary of Flabeg U.S. Holding, Inc., which in turn is a subsidiary of Flabeg Solar International, GmbH. The latter is a subsidiary of Flabeg GmbH, which is a subsidiary of Flabeg Holding GmbH (collectively, referred to as the "Flabeg Group"). The Flabeg Group's business involves the production and sale of solar panels worldwide.

The Debtor's claims arise out of two insurance policies (referred to herein individually as the "First Policy" and "Second Policy," and collectively as the "Policies"). Both Policies were issued through insurance broker Willis GmbH & Co. KG ("Willis") of Munich, Germany.[6] Debtor

---

[2] There is a significant procedural distinction between a motion made pursuant to Rule 12(b)(2) and 12(b)(6) in that a motion challenging personal jurisdiction "…is inherently a matter which requires resolution of factual issues outside the pleadings . . . ." *See Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)).

[3] In this case, the parties have conducted jurisdictional discovery and submitted Stipulated Findings of Fact for the Court to consider in ruling on the Motion. Although this Court does not apply the heightened standard here, in *Steinfield*, upon submission of the parties' joint stipulation of facts, the court held the plaintiffs to the higher preponderance of the evidence standard. *See* 97 F.Supp.3d at 612.

[4] The facts set forth herein are taken from the parties' Stipulated Findings of Fact.

[5] The case was commenced by an involuntary petition under Chapter 7 of the Bankruptcy Code. Thereafter, the case was converted to a case under Chapter 11. *See* Case No. 13-21415, Doc. No. 65.

[6] Although initially named as a Defendant, Debtor voluntarily dismissed the proceeding as to Willis. *See* Doc. No. 19.

was not involved in applying for coverage under the Policies; rather, the application for coverage was handled by Flabeg Holding GmbH in Germany. Notably, Flabeg Holding GmbH (hereinafter, "Named Insured") is also the named insured on the Policies.

Movants, all German insurance entities, underwrote the Policies in Germany. None of the Movants is incorporated or maintains a principal place of business in the United States. Debtor did not receive from Movants any invoice or statement for premiums or other charges related to the Policies. Any invoices or statements received by Debtor for portions of premiums due under the Policies were sent by Willis. Likewise, the only payments made by Debtor for portions of the premiums were sent to and made payable to Willis.

The purpose of the Policies (subject to their terms and conditions) was, among other things, to insure against loss of or damage to solar panels during transport. During the time periods covered by the Policies, certain shipments of solar panels from the United States to India sustained physical damage during transport. By letter dated April 30, 2013, the Debtor submitted a claim on the Policies to the broker, Willis.

Meanwhile, also in 2013, the Named Insured applied for bankruptcy protection in Germany. In those proceedings, Dr. Siegfried Beck was appointed as liquidator of the Named Insured, and he too sought compensation for the solar panel damages. ERGO, together with its co-insurers, offered to pay, and Dr. Beck agreed to accept, the sum of €35,923.40 to settle the Named Insured's claims under the First Policy with respect to the shipments to India. NHA offered to pay, and Dr. Beck agreed to accept, the sum of €16,962.86 to settle the Named Insured's claims under the Second Policy. Said payments were made per the instructions of the liquidator of the Named Insured. The Movants have taken the position that these settlements fully and finally resolved their obligations under the Policies. As the Debtor has taken the position that payments under the

Policies should have been made to Debtor, the instant litigation was commenced. Before the litigation can proceed any further in this forum, the Court must determine whether it can exercise personal jurisdiction over Movants.

### Analysis

Pursuant to Fed.R.Bankr.P. 7004(f), three requirements must be met in order for a court to exercise personal jurisdiction over a party: (1) service of process must have been made in compliance with Fed.R.Bankr.P. 7004 or Fed.R.Civ.P. 4; (2) the court must possess subject matter jurisdiction pursuant to 28 U.S.C. §1334; and (3) the exercise of jurisdiction must be consistent with the Constitution and laws of the United States. *See Capmark*, 479 B.R. at 338. This Court's subject matter jurisdiction has not been challenged. With respect to service of process, Movants have alleged insufficient service of process in addition to lack of personal jurisdiction; however, as improper service may be cured, the Court begins by addressing whether the exercise of jurisdiction is consistent with the Constitution and the laws of the United States.

To satisfy constitutional due process, a defendant must have sufficient contacts with the forum. In proceedings arising in or related to a case under the Bankruptcy Code, personal jurisdiction is assessed based upon a defendant's contacts with the United States as a whole, as opposed to a particular state. *See Capmark*, 479 B.R. at 339; *Astropower Liquidating Trust v. Xantrex Tech., Inc.* (*In re Astropower Liquidating Trust*), No. 05-50867, 2006 WL 2850110, at *3, 2006 Bankr. LEXIS 2443, at *8 (Bankr.D. Del. Oct. 2, 2006); *Springel v. Prosser & Cambell, P.C.* (*In re Innovative Communication Corp.*), No. 09-3009, 2013 WL 1795580, at *3, 2013 Bankr. LEXIS 1778, at *9 (Bankr. D.V.I. Apr. 29, 2013). As there are two categories of personal

jurisdiction, the Court will address in turn whether Movants have sufficient contacts with the United States to support the exercise of either general or specific jurisdiction.[7]

In order to establish general jurisdiction over a defendant, the extent of a defendant's affiliations must be so substantial as to render the defendant essentially at home in the applicable forum. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). In this proceeding, Debtor did not plead sufficient facts in support of the exercise of general jurisdiction nor did the Debtor submit affidavits or any competent evidence to support a finding that the Movants are essentially at home in the United States.[8] Further, the Stipulated Findings of Fact provide no support for the exercise of general jurisdiction over Movants. Debtor asserts in its brief that "…it is believed and therefore averred that ERGO, NHA and Allianz had direct activities and involvement with broker Willis which maintains business offices throughout the United States including offices within this district." *See* Debtor's Brief, Doc. No. 57, at 5. Even assuming that Movants had direct contact with a broker, which happens to maintain offices in the United States, this alone is insufficient for the purpose of establishing general jurisdiction. Accordingly, Debtor failed to meet its burden.

Having determined that the Court is unable to exercise general jurisdiction, the Court turns to whether this action may nonetheless proceed against Movants on the basis of specific jurisdiction. A determination of whether specific jurisdiction exists requires a three-part inquiry:

> First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities.

---

[7] In *Springel*, the bankruptcy court found the relevant inquiry to be under the Fifth Amendment. *See* 2013 WL 1795580, at *3, 2013 Bankr. LEXIS 1778, at *9. However, "[m]ost courts, nonetheless, have applied the same principles enunciated in connection with the due process clause of the Fourteenth Amendment when determining whether minimum contacts with the United States are present." *Anheuser-Busch, Inc. v. Paques, Inc.* (*In re Paques, Inc.*), 277 B.R. 615, 628 (Bankr.E.D.Pa. 2000).

[8] The Court notes that, within the Complaint, Debtor identifies Allianz with a business address in Chicago, Illinois. *See* Complaint, ¶4. To the contrary, the parties have stipulated that Allianz is a German insurance entity located in Munich, Germany, which is not incorporated in the United States and does not have a principal place of business in the United States. *See* Stipulated Findings of Fact, at ¶¶31-33.

> And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

*See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted). The Court begins by addressing whether the Movants have purposefully directed their activities at this forum and whether the litigation arises out of or relates to those activities. Only if these elements are satisfied will the Court address whether the exercise of jurisdiction comports with fair play and substantial justice.

This adversary proceeding is based upon an alleged breach of contract, in which Debtor represents itself to be insured under the Policies. The requested relief pursuant to 42 Pa.C.S. §8371 is likewise based upon this premise, as the statute provides for the potential award of interest, punitive damages, and costs and fees in an action arising under an insurance policy where the insurer has acted in bad faith toward the insured. As the Supreme Court acknowledged in *Burger King Corp. v. Rudzewicz*, "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." 471 U.S. 462, 478 (1985). Prior negotiations, contemplated future consequences, terms of the contract, as well as the parties' actual course of dealing are all appropriate factors to evaluate in determining whether a defendant purposefully established minimum contacts with the forum. *Id.* at 479. An important inquiry is whether the defendant's contacts with the forum played a role in either the formation of the contract or its breach. *See Telcordia Tech, Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). These factors guide the Court's analysis.

With respect to contract formation, there is simply nothing in the record connecting Movants, the creation of the Policies, and this forum. As revealed by the Stipulated Findings of Fact, Movants underwrote the Policies in Germany; Debtor was not involved in applying for coverage under the Policies; and the application for coverage was handled by the Named Insured in Germany. *See* Stipulated Findings of Fact, ¶¶34-36. Debtor does not point to terms of the contract or any course of dealing between the parties in an effort to establish minimum contacts with this forum. To meet its burden, Debtor appears to rely exclusively upon allegations that the Movants

> …conducted business in this district either directly or through authorized representatives including providing insurance coverage to a party in this district, seeking payments from a party in this district and accepting payment from a party in this district.

*See* Response, Doc. No. 38, at ¶36. In support, Debtor provides a premium invoice from Willis and evidence of payment. *See* Exhibits A and B to Response, Doc. No. 38. Notably, however, as set forth in the Stipulated Findings of Fact:

> [Debtor] did not receive from [Movants] any invoice or statement for premiums or other charges in connection with the Policies.
>
> Any invoices or statements received by [Debtor] for portions of premiums due under the Policies were sent by, and received by [Debtor] from, the broker, Willis.
>
> Any payments made by [Debtor] for portions of premiums due in connection with the Policies were payable, and sent, to the broker Willis.

*See* Stipulated Findings of Fact, ¶¶37-39. To the extent Debtor intends for the Court to now infer that Willis was acting as an agent of Movants, Debtor took no steps to plead or present facts that

9

would establish such a relationship to satisfy the requirements for the purpose of personal jurisdiction.[9]

Debtor neither alleges nor offers evidence of any direct contact between Movants and Debtor. To the extent that Debtor relies on its contention that it is insured under the Policies for the purpose of meeting its burden, Debtor does not indicate *how* it is covered. Instead, Debtor alleges the following to establish coverage: Debtor received invoices from Willis and made premium payments to Willis; Debtor shipped the items in question; Debtor submitted an insurance claim related to the shipments. *See* Debtor's Brief, Doc. No. 57, at 2. These allegations do not constitute contacts by Movants directed at this forum. The Court makes no finding regarding whether Debtor is, in fact, covered in some manner by the Policies; however, *even accepting Debtor's allegation regarding coverage as true*, Debtor provided no information for the Court to assess whether by virtue of the alleged coverage Movants purposefully directed their activities at this forum.[10] Debtor has not set forth how it was contemplated in the Policies or how Debtor's location in the United States establishes that Movants purposefully availed themselves of the

---

[9] Notably, "[t]he general rule in Pennsylvania is that the insurance broker is an agent of the *insured*[.]" *See Comcast Spectacor L.P. v. Chubb & Son, Inc.*, No. 05-1507, 2006 WL 2302686, at *10, 2006 U.S. Dist. LEXIS 5526, at *37 (E.D. Pa. Aug. 8, 2006) (emphasis added). Furthermore, the act of collecting a premium does not establish that a broker is the agent of the *insurer*. *See Comcast Spectacor*, 2006 WL 2302686, at *11, 2006 U.S. Dist. LEXIS 5526, at *40. Even if Willis could be deemed an agent of Movants by sending invoices to Debtor, the Court would be hard-pressed to find that this factor alone is sufficient to meet Debtor's burden given the unique facts of this case. Here, there is no indication that Movants possess the requisite minimum contacts with this forum by the creation of the Policies applied for by a German entity in Germany. Rather, it appears to be Debtor's position that, by virtue of these invoices and payments, Debtor subsequently retained the benefit of coverage after the Policies were issued.

[10] For instance, as indicated by Movants, one way that Debtor *could have been insured* under the Policies was *if* the Named Insured held at least 50% of the shares of Debtor or a controlling position in its management. *See* Memorandum, Doc. No. 33, at 13. Even under such circumstances, Debtor would have to demonstrate how *Movants* directed their activities at this forum by virtue of the ownership and control exercised by the Named Insured.

privilege of conducting activities in this forum. Debtor failed to meet its burden to establish with reasonable particularity sufficient contacts between Movants and the forum.

Although Debtor relies upon the analysis in *Ace Pecan Co. v. Granadex Int'l Ltd.* (*In re Ace Pecan Co.*), 143 B.R. 696 (Bankr.N.D. Ill. 1992), to support the exercise of jurisdiction in this case, the facts are clearly distinguishable. In *Ace Pecan*, the court found as follows with respect to Granadex S.A., a corporation in Geneva, Switzerland:

> Granadex had significant contacts with a nut broker in the United States for the purpose of arranging the purchase of nuts. The transaction to purchase nuts from Ace Pecan was **negotiated and consummated in the United States**. The present litigation arises from those contacts with the United States. Furthermore, by **entering into a contract to purchase goods from a domestic corporation** Granadex should have reasonably foreseen that it could be brought into a court in this country for a breach of that contract.

*Id*. at 701 (emphasis added). To the contrary, in this case, Debtor failed to establish how the Movants, as German entities, could have reasonably foreseen being brought into a court in the United States on a breach of contract claim by Debtor as a result of the Policies applied for in Germany by the Named Insured, also a German entity.

As the Debtor failed to demonstrate that Movants purposefully directed activities at this forum and that the litigation arises out of or relates to those activities, the Court need not address the third part of the inquiry for the purpose of specific jurisdiction, i.e., whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.[11] Furthermore, there is no

---

[11] The Court notes, however, that Movants have presented compelling facts in support of such a finding. Although this is a heavy burden, the Movants demonstrated that the Policies were issued in the German language, provide for the applicability of German law, and identify the venue as Germany. *See* Exhibit 1 to Declaration of Jobst Von Werder (Exhibit A to Motion), Clause 19.5 and Exhibit 3 to Declaration of Jobst Von Werder, Clause 26. Furthermore, any litigation regarding coverage under the Policies for the claims asserted by Debtor implicates the settlements entered into in the German insolvency proceedings of the Named Insured.

11

need to address Movants' challenge to the propriety of service. The Movants must be dismissed from this proceeding as this Court cannot exercise jurisdiction over them.

## **Conclusion**

Based upon the foregoing, this Court finds that Debtor failed to meet its burden in the face of Movants' jurisdictional challenge. Accordingly, the Motion must be granted, and Movants will be dismissed from this action. The adversary proceeding must remain open, however, as Munich Re remains as a Defendant. Orders will be entered consistent with this Memorandum Opinion.

Date: December 7, 2016          /s/ Carlota M. Böhm
         Carlota M. Böhm
         United States Bankruptcy Judge

**MAIL TO:**

John P. Lacher, Esq., and Robert O Lampl, Esq.
Jason L. Ott, Esq., and Steven W. Zoffer, Esq.
Thomas C. Murphy, Esq.

FILED
12/7/16 4:00 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA